IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

LARRY BECHEL,
Reg. #08130-025                                                                                  PLAINTIFF

V.                                        2:14CV00126 JTR

UNITED STATES OF AMERICA                                                         DEFENDANT

# MEMORANDUM AND ORDER[1]

Plaintiff, Larry Bechel ("Bechel"), is a prisoner in the Federal Correctional Institution located in Forrest City, Arkansas ("FCI-FC"). He has filed this *pro se* action, pursuant to the Federal Tort Claims Act ("FTCA"), alleging that Defendant provided him with negligent dental care.[2] *Docs. 2 & 7.*

Both parties have filed Motions for Summary Judgment, along with supporting pleadings, on the merits of Bechel's claim.[3] *Docs. 21, 22, 23, 25, 26, 27, 28, 33, 34,*

---

[1] On February 6, 2015, the parties consented to proceed before a United States Magistrate Judge. *Doc. 10.*

[2] The FTCA waives sovereign immunity and allows plaintiffs to hold the United States vicariously liable for negligent acts committed by federal employees. *See* 28 U.S.C. § 1346; *Dykstra v. U.S. Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir. 1998). It is undisputed that all the hygienists and dentists who treated Bechel at FCI-FC were federal employees.

[3] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present

*35, 39, 40 & 42.* Thus, the issues are properly joined and ready for disposition

## I. Facts

The relevant facts, viewed in the light most favorable to Bechel, are as follows:

1. On December 20, 2010, Bechel arrived at FCI-FC. He was sixty-four years old. *Doc. 22, Ex. A at 10 & 17.*

2. On January 20, 2011, Bechel received his initial dental screening by Dr. Smith.[4] Bechel did not report any pain or dental issues. Dr. Smith noted that Bechel had four missing teeth and five teeth with multiple fillings. He also determined that teeth #15, #18, #21, and #22 were decayed and needed restoration. However, Dr. Smith did not specify what type of restoration was needed or when it should be scheduled. Dr. Smith educated Bechel on proper oral hygiene, told him to file a medical request if he wanted his teeth cleaned or needed other non-emergent dental care, and instructed him to go to the prison infirmary if he had emergent dental needs. *Doc. 22, Ex. A at 27-30.*

---

specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[4] BOP policy provides that all federal prisoners receive an initial dental screening (which does not include cleaning) within thirty days of arrival. Thereafter, prisoners may obtain "non-emergent" dental treatment -- which includes yearly cleaning, restorative treatments, and the fabrication of prosthesis -- by filing a Request to Staff Form ("Request"). Non-emergent services are provided "as resources, staff, time, and materials are available." In contrast, prisoners with "emergent dental" needs -- such as "severe dental pain, traumatic injuries, or acute infections" -- may go to the prison infirmary. *Doc. 22, Ex. A at 114, 124-127* (BOP Program Statement P6400.2).

3. On April 22, 2011, a hygienist cleaned Bechel's teeth, took x-rays, noted that his gums were slightly erythematous, characterized his oral hygiene as "fair," and reminded him of proper hygiene techniques. Bechel did not complain of pain or other dental problems at that time or during the next three months. *Id. at 34-35.*

4. On August 15, 2011, Bechel filed a Request stating that "some teeth" "need care now or its going to be to late for them. I also need dentures made."[5] Bechel did not complaint of pain or allege that any of his teeth had broken. Similarly, he did not claim that he was having difficulty eating or that his health was being adversely affected by his four missing teeth. A prison hygienist responded that Bechel was on the non-emergent dental waiting list and that he could go to the infirmary if he started to experience pain. During the next four months, Bechel did not go to the infirmary or file any Requests seeking dental treatment. *Id. at 39.*

5. On December 6, 2011, Bechel told a hygienist who was cleaning his teeth that "sometime in August of 2011," he broke a tooth while eating an apple. However, he stated that he did not start experiencing pain until a "couple of weeks ago." In response to that pain, Bechel did *not* go to the infirmary for immediate medical treatment, or file a Request alerting dental providers that his tooth had broken. The

---

[5] BOP policy provides that prisoners can receive dentures only if: (1) all restorative treatment has been completed; (2) all non-restorable teeth have been extracted; and (3) the inmate's health is being adversely affected. *Doc. 22, Ex. A at 126-127* (BOP Program Statement P6400.02).

hygienist recorded that tooth #21 had broken off. She took x-rays, gave him ibuprofen for pain, and scheduled a dental appointment. *Id. at 41.*

6. On December 7, 2011, Dr. Smith determined that tooth #21 had a residual root that needed to be extracted and that tooth #22 had cavities. She instructed Bechel to take ibuprofen and penicillin, and scheduled an appointment to fix teeth #21 and #22 the following day. However, that appointment was canceled because a medical doctor determined that Bechel's blood pressure was too high to proceed. Bechel began taking blood pressure medications *Id. at 44-45.*

7. On December 13, 2011, Dr. Jackson extracted the residual root of tooth #21 and filed the cavities in tooth #22 with a resin/glass ionomer. *Id. at 53.*

8. On December 20, 2011, Bechel complained that tooth #22 was "still hurting and needs [to be taken] out." He also rated his pain as a nine on a scale of ten. Later that day, Dr. Jackson extracted tooth #22 because it had pulpitis and could not be saved. *Id. at 55-56.*

9. On June 4, 2012, a hygienist cleaned and x-rayed Bechel's teeth. Bechel did not complain of pain or report any dental problems at that time. The hygienist noted that Bechel's gums were slightly erythematous and that he continued to have "fair" oral hygiene. For the next eleven months, Bechel did not complain of pain or seek dental treatment. *Id. at 62-63.*

10.     On April 11, 2013, Bechel complained of severe pain in tooth #29 and requested that it be removed. Later that day, Dr. Barrett extracted tooth #29 because it had pulpal necrosis and could not be saved.  *Id. at 65-66.*

11.     On October 17, 2013, Bechel's teeth were cleaned and x-rayed by a hygienist, who again rated his oral hygiene as only "fair."  Bechel did not report any pain or dental problems. Dr. Barrett determined that teeth #15 and #18 were decayed and needed restoration with  metal crowns. He also recommended that Bechel, who now had a total of eleven missing teeth, receive lower partial dentures.[6]  Dr. Barrett did not classify either procedure as emergent or otherwise specify when those dental procedures should occur.  During the next sixteen months, Bechel did not file any Requests or go to the infirmary for dental treatment.  *Id. at 73-78.*

12.     On February 25, 2015, Bechel's teeth were cleaned and x-rayed by a hygienist. Bechel did not report any dental pain. Dr. Jackson determined that: (a) tooth #18 did not need any restoration; (b) tooth #15 needed a metal crown; (c) tooth #6

---

[6] When Bechel arrived at FCI-FC, teeth #19, #20, #30, and #31 were recorded as missing. *Doc. 22, Ex. A at 30.*  Thereafter, prison dentists extracted teeth #21, #22, and #29.  *Id.*  That is a total of 7 missing teeth.  However, during the October 17, 2013 examination, Dr. Barrett recorded that Bechel's wisdom teeth were also missing. *Id., Ex. A at 78.* That is a total of 11 missing teeth. It is unclear whether: (1) during the initial screening, Dr. Smith failed to record that Bechel's wisdom teeth were also missing; or (2) Bechel lost his wisdom teeth while in prison. However, because Bechel *does not allege* that prison dentists improperly pulled or otherwise negligently treated his wisdom teeth, that discrepancy is not relevant to any of Bechel's claims in this case.

needed a filling; and (d) Bechel needed lower partial dentures.[7]  *Id. at 87-89.*

       13.    On March 17 and 25, 2015, Dr. Jackson put a metal crown on tooth #15, filled teeth #6 and #5 with an unspecified composite, and made a mold of Bechel's lower teeth for partial dentures. During the next several months, Bechel did not complain of pain or file any Requests seeking dental treatment. *Id. at 96.* Additionally, Bechel admits that the restorations of teeth #6 and #5 "look good and perform satisfactorily." *Doc. 28, Ex. 3.*

       14.    On April 14, 2015, Dr. Jackson made another mold of Bechel's lower teeth because the prior one did not properly capture all of his teeth. *Id. at 100.*

       15.    On July 30, 2015, Bechel received lower partial dentures.[8] *Doc. 39 at 2.*

## II.  Discussion

In this case, Bechel has asserted a malpractice action, for negligent dental care, against the United States of America under the FTCA.  Such negligence claims are

---

[7]  Dr. Jackson scheduled those procedures for February 27, 2015, but for unexplained reasons, Bechel did not show up for that appointment. *Id., Ex. A at 91.* The procedures were rescheduled for March 11, 2015, but that appointment was canceled -- while Bechel was in the dental chair and Dr. Jackson was preparing to begin the procedures -- because workers unexpected arrived to start painting the dental clinic. *Id., Ex. A at* 93.

[8]  In his summary judgment papers, Bechel claims that his partial lower dentures do not fit properly and make it difficult for him to eat. *Doc. 28.*  That claim is not part of this lawsuit because it arose on July 30, 2015, which was *eight months after* Bechel filed his Complaint on November 4, 2014. *See* 28 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris,* 218 F.3d 884, 885 (8th Cir. 2000) (providing that each claim raised by a prisoner must be fully exhausted before the complaint is filed in federal court).

governed by the substantive law of the state where the allegedly tortuous acts occurred. *See* 28 U.S.C. § 1346(b); *Little White Man v. United States,* 446 F.3d 832, 835 (8th Cir. 2006). Accordingly, all of the claims in this malpractice action are governed by Arkansas law. *Id.*

A plaintiff raising a malpractice claim in Arkansas must have "expert testimony" establishing: (1) the standard of care; (2) a breach of the standard of care; and (3) proximate causation. *See* Ark. Code Ann. § 16-114-206(a); *Robson v. Tinnin*, 911 S.W.2d 246, 249-250 (Ark. 1995) (applying § 16-114-206(a) to a dental malpractice case). However, such expert testimony is *not required* if the standard of care, breach, and proximate cause are "within the jury's comprehension as a matter of common knowledge." *Id.*, *see also Mitchell v. Lincoln,* 237 S.W.3d 455, 460 (Ark. 2006) (explaining in the "vast majority" of cases, Arkansas courts have held that "expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen); *Haas v. Starnes*, 915 S.W.2d 675, 678 (Ark. 1996) (explaining that the common knowledge exception applies to obvious cases of negligence such as "a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it").

### A. Restoration of Decaying Teeth

Bechel alleges that prison dental providers were negligent when they: (1)

waited four months after he arrived at the FCI-FC to clean his teeth; (2) delayed performing restortive procedures on teeth #21, #22, and #15, which were first recommended by Dr. Smith during the January 20, 2011 initial screening;[9] (3) never performed restorative procedures on tooth #18 as recommended by Dr. Smith on January 20, 2011; (4) extracted tooth #22, which had pulpitis, instead of performing a root canal; and (5) placed a metal crown, instead of a ceramic crown, on tooth #15. Bechel believes that the extraction of teeth #21, #22, and #29 could have been avoided and that teeth #15 and #18 would have been "less decayed" if he had received timely treatment.

When he arrived at FCI-FC, Bechel was sixty-four years old and had extensive preexisting dental problems. The appropriate standard of dental care for those significant problems is not a matter of "common knowledge." *See Robson,* 911 S.W.2d at 611 (concluding that "matters relating to the changing of dental implants and the treatment of fractured teeth are not matters of common knowledge"). In fact, the prison dentists, who have extensive medical training and experience, occasionally disagreed about which of Bechel's teeth needed restoration, when they should be restored, and how they should be restored.

Proximate causation is also a problem for Bechel, who had a well-documented

---

[9] As previously discussed, tooth #21 broke in August of 2011, tooth #22 was filled and then later extracted in December of 2011, and tooth #15 was crowned in March of 2015.

history of persistent tooth decay, probably caused by only "fair" dental hygiene. It is not within the "common knowledge" of a judge[10] to decide whether earlier restorative treatments would have prevent Bechel's teeth from having to be extracted or whether his "fair" dental hygiene and long history of decay would have made those extractions inevitable. Such a determination can only be made after hearing and considering expert testimony. Thus, under Ark. Code Ann. § 16-114-206(a), Bechel is required to substantiate his dental malpractice allegations with expert testimony. He has not done so.

In contrast, Defendants have filed a sworn affidavit from Dr. Stewart, who is a dentist licensed to practice in Arkansas. *Doc. 22, Ex. B.* In that affidavit, Dr. Stewart concludes that, in his professional medical judgment, Bechel received "appropriate dental care" from prison hygienists and dentists. *Id. at 4.*

Bechel has not produced an expert witness to refute Dr. Stewart's testimony or otherwise satisfy the requirements of Ark. Code Ann. § 16-114-206(a). Accordingly, Defendant, as a matter of law, is entitled to summary judgment on Bechel's negligence claims regarding the restoration of his decaying teeth.

**B.   Lower Partial Dentures**

---

[10] All FTCA claims must be tried by a judge, and not a jury. 28 U.S.C. § 2402.

Bechel also claims that prison dental providers negligently delayed providing him with lower partial dentures, and that he should have received permanent dental implants instead of dentures.

Dr. Jackson made a mold, for partial dentures, *on the same day* that he restored the last of Bechel's decaying teeth. Additionally, throughout the relevant time period Bechel maintained a weight of approximately 200 pounds.[11]  Thus, absent testimony from a medical expert, there is nothing in the record that suggests that Bechel suffered any adverse health consequences as a result of not receiving dentures sooner. Similarly, *nothing* other than Bechel's lay opinion supports his subjective belief that his missing teeth should have been replaced with permanent dental implants, instead of partial dentures.  Finally, both of Bechel's theories of negligence related to his partial dentures are contrary to Dr. Stewart's expert opinion that he received "appropriate dental care."

Thus, to proceed to trial on these negligence claims, Bechel must have supporting testimony from a dental expert.  Because he has no such expert testimony, Defendant, as matter of law, is entitled to summary judgment on Bechel's negligence claims regarding his lower partial dentures.

### III.  Conclusion

---

[11] When he arrived at FCI-FC in December of 2010, Bechel was 72 inches tall and weighed 218 pounds.  *Doc. 22, Ex. A at 15-16.*  On May 6, 2015, he weighed 205 pounds. *Id. at 105*.

IT IS THEREFORE ORDERED THAT:

1.  Bechel's Motion for Summary Judgment *(Doc. 25)* is DENIED.

2.  Defendant's Motion for Summary Judgment *(Doc. 21)* is GRANTED, and this case is DISMISSED, WITH PREJUDICE.

Dated this 5th day of February, 2016.

*/s/ J. Thomas Ray*
UNITED STATES MAGISTRATE JUDGE